NOT FOR PUBLICATION

| | |
|---|---|
| THOM VELTO,<br><br>    Plaintiff,<br><br>v.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY, DEWEY ELECTRONICS CORPORATION and DEWEY ELECTRONICS CORPORATION LONG TERM DISABILITY PLAN,<br><br>    Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Hon. Dennis M. Cavanaugh<br><br>Civil Action No. 10-cv-01829 (DMC-JAD)<br><br>OPINION |

This matter comes before the Court upon motion by plaintiff Thom Velto ("Plaintiff") for leave to file an amended complaint to assert claims for breach of contract and negligence against defendant Dewey Electronics Corporation ("Dewey"). Upon consideration of the parties' submissions, and for the reasons stated below, Plaintiff's motion is **denied**.

I.    BACKGROUND

On April 9, 2010, Plaintiff filed a Complaint against Reliance Standard Life Insurance Company ("Reliance"), Metropolitan Life Insurance Company ("MetLife"), Dewey Electronics Corporation Long Term Disability Plan and Dewey asserting claims pursuant to 29 U.S.C. § 1132(a)(1)(B) for recovery of disability income benefits allegedly due Plaintiff under an Employee Welfare Benefit Plan that provides employees of Dewey with group long term disability benefits under two separate insurance policies issued by Reliance and MetLife. (Compl., ¶ 4, ECF No. 1)

Specifically, Plaintiff alleges that he was a full-time employee at Dewey until March 26, 2006 when he ceased working due to medical issues. *Id.* at ¶ 10. Plaintiff subsequently made a

1

claim for benefits under Dewey's Long Term Disability Plan, which was approved by Reliance on or about February 12, 2007. *Id.* at ¶ 12. Plaintiff thereafter received benefits through June 26, 2008, at which time Reliance terminated Plaintiff's benefits on the basis that Plaintiff's disability was subject to a twenty-four (24) month limitation period for mental or nervous disorders. *Id.* On or about January 29, 2009, Plaintiff submitted an administrative appeal of Reliance's denial of benefits, claiming that he suffered from "total disability" which was not subject to the mental or nervous exclusion or limitation. *Id.* at ¶ 14. In response, Reliance reversed its denial based on its categorization of Plaintiff's condition, but denied Plaintiff's claim on the basis that Plaintiff was not covered under Reliance's policy because Plaintiff was allegedly disabled prior to the effective date of the Reliance policy. *Id.* at ¶ 16. Reliance further stated that Plaintiff's claim should be made to MetLife, which was Dewey's long term disability insurance carrier up until December 1, 2005. *Id.*

Plaintiff thereafter filed a second appeal with Reliance and also submitted a claim for benefits with MetLife. *Id.* at ¶¶ 18-19. However, Reliance affirmed its denial of benefits. ¶ 19. MetLife also denied Plaintiff's claim on the basis that Plaintiff had worked at Dewey beyond the December 31, 2005 termination date of the MetLife policy. *Id.* at ¶ 18. Plaintiff subsequently appealed MetLife's decision; however, MetLife upheld its denial of benefits. *Id.* at ¶¶ 20, 21.

Plaintiff alleges that Reliance and MetLife denied his claims without rational support and that their handling and determination of his claims was arbitrary and capricious. *Id.* at ¶¶ 23-24. Plaintiff therefore seeks a declaration that (1) he be paid all disability benefits to which he was entitled and (2) he continue to receive disability benefits until such time the benefits are to be discontinued under the policy. *Id.* at 7. Plaintiff also seeks attorney's fees and prejudgment interest. *Id.*

On July 26, 2010, the Court entered a RULE 16 Pretrial Scheduling Order which provides that "[a]ny motion to amend pleadings must be returnable not later than **9/1/10**." (Order, ¶ 14, ECF No. 16) On January 14, 2011, Plaintiff filed this motion for leave to amend the Complaint. In the proposed Amended Complaint, Plaintiff adds allegations against Reliance and adds two counts against Dewey.

Plaintiff alleges that Reliance's second review of Plaintiff's claim was not provided for under the terms of Reliance's policy as required under ERISA claims procedure regulations. (Amend. Compl., ¶¶ 23-25, ECF No. 20-2). Plaintiff also alleges that Reliance is estopped to deny Plaintiff's claim because it already paid benefits to Plaintiff for over twenty-four (24) months. *Id.* at ¶ 26.

Plaintiff also adds claims for breach of contract and negligence against Dewey. Specifically, Plaintiff alleges that when Dewey offered Plaintiff a position, Dewey included in its compensation to Plaintiff a standard benefit package that included long term disability insurance. *Id.* at ¶ 31. Plaintiff claims that Dewey, by changing long term disability insurance carriers (from MetLife to Reliance), "failed to discharge its contractual obligation to provide Plaintiff with long term disability insurance" since both MetLife and Reliance denied Plaintiff benefits. *Id.* at ¶ 40. Plaintiff further claims that Dewey was negligent in failing to maintain long term disability coverage and/or failing to disclose to Plaintiff how the change in long term disability insurance carriers would affect Plaintiff's eligibility for long term disability benefits. *Id.* at ¶¶ 46-47.

Defendants oppose Plaintiff's motion on the grounds that (1) Plaintiff has failed to show good cause for leave to file an Amended Complaint and (2) the proposed breach of contract and negligence claims against Dewey are futile because Plaintiff signed a Separation Agreement and

Release in which Plaintiff released all claims he had against Dewey, including any claims in connection with long term disability benefits.

Plaintiff argues in reply that his motion is timely because he was permitted to file the motion by a December 7, 2010 Text Order of the Court. Plaintiff also argues that he was served after the deadline for amendment of pleadings passed with documents that provided new information giving rise to the two proposed claims against Dewey. Finally, Plaintiff argues that the proposed claims are not futile because the Separation Agreement and Release did not release his claim for long term disability benefits.

## II. STANDARD OF REVIEW

Amendments of pleadings are governed by FED. R. CIV. PRO. 15 and FED. R. CIV. PRO. 16. A motion to amend a pleading that is filed <u>before</u> the deadline for amendments of pleadings has passed in a RULE 16 Scheduling Order will be governed by RULE 15(a) only. Pursuant to RULE 15(a), after a responsive pleading has been filed:

> [A] party may amend its pleading only with the opposing party's written consent or the courts leave. The court should freely give leave when justice so requires.

RULE 15(a)(2).

"The grant or denial of leave to amend is a matter committed to the sound discretion of the district court." *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). The Third Circuit has adopted a liberal approach under to the amendment of pleadings RULE 15 to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted). The burden is generally on the party opposing the amendment to demonstrate why the amendment should not be permitted. *Foman v. Davis*, 371 U.S. 178 (1962).

Leave to amend a pleading may be denied where the court finds: (1) undue delay; (2) undue prejudice to the non-moving party; (3) bad faith or dilatory motive; or (4) futility of amendment. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Unfair prejudice is the most common factor used by courts to deny leave. Unfair prejudice is usually found when there has been a significant unjustified delay in moving to amend that creates an unfair disadvantage for the defendant. Delay alone will not justify denying a motion to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (holding that mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay). Only where delay becomes " 'undue,' placing an unwarranted burden on the court, or ... 'prejudicial,' placing an unfair burden on the opposing party" is denial of a motion to amend appropriate. *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir.1984) ("The question of undue delay, as well as the question of bad faith, requires that [the Court] focus on the plaintiff['s] motives for not amending [its] complaint to assert [the] claim[s] earlier; the issue of prejudice requires that [the Court] focus on the effect on the [defendant]."). Delay may become undue when there has been previous opportunity to amend the complaint. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir.1993) (finding that a three-year lapse between the filing of the complaint and the proposed amendment was "unreasonable" delay when plaintiff had previous opportunities to amend). In such cases, the Court must focus on the moving party's reasons for not amending the pleading sooner. *USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004).

A proposed amendment will be denied as futile if it "would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d at 115. Thus, "[i]n assessing 'futility' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* To survive dismissal under RULE 12(b)(6), a complaint "must contain sufficient factual

matter accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

After the deadline in a court's RULE 16 Scheduling Order for amendments of pleadings has passed, however, a motion for leave to amend is governed by both RULE 15 and RULE 16. RULE 16(b)(4) provides that "[a Scheduling Order] may be modified only for good cause and with the judge's consent." As such, a party must first demonstrate "good cause" to amend the RULE 16 Scheduling Order in order to extend the deadline to amend pleadings. *Stallings v. IBM Corp.*, 2009 WL 2905471, at *15 (D.N.J. Sept. 8, 2009). Only once the party has shown sufficient "good cause" to amend the RULE 16 Order to extend the deadline will the Court evaluate the proposed amendment under RULE 15(a). If the moving party is unable to demonstrate "good cause", the Court will deny the motion and will not proceed to a RULE 15 analysis.

### III. DISCUSSION

Pursuant to the July 26, 2010 Pretrial Scheduling Order, all motions to amend pleadings were to be returnable on or before September 1, 2010. (Order, ¶ 14, ECF No. 16) Plaintiffs filed the instant motion on January 14, 2011.

Plaintiff argues that his motion does not violate the deadline in the Pretrial Scheduling Order because "this court entered a Text Order on December 7, 2010 permitting this motion to be filed." (Pl. Reply Br. 8, ECF No. 23) While Plaintiff is correct that the Court entered a Text Order, which states "Plaintiff's motion to amend to be filed by 1/14/11" (Order 12/7/10), Plaintiff incorrectly assumes that the Text Order also eliminated the requirement under RULE 16(b) for Plaintiff to demonstrate good cause to amend the Pretrial Scheduling Order. In fact, it

did not. Nowhere in the Text Order does it state that the Pretrial Scheduling Order was amended to extend the deadline for amendments of pleadings.[1]

Accordingly, Plaintiff is required to show "good cause" to amend the Pretrial Scheduling Order to extend the deadline to amend pleadings before the Court can address Plaintiff's motion for leave to amend under RULE 15(a). *See Stallings*, 2009 WL 2905471, at *15. However, Plaintiff cites only the liberal standard under RULE 15.

The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed. *Stallings*, 2009 WL 2905471, at *16 (*citing Dimensional Commc'ns, Inc. v. Oz. Optics, Ltd.*, 148 Fed. Appx. 82, 85 (3d Cir. 2005) (defendant "could not satisfy Rule 16(b)'s good cause good cause requirement because [it] was in possession of the facts underlying the proposed counterclaim well before the amendment deadline.")); *Prime Ins. Syndicate v. United Risk Mgmt. Srvcs.*, 2006 WL 2085388, at *5 (D.N.J. July 25, 2006) ("Plaintiff provided no reason for why it could not have asserted these new claims against [the defendant] within the requisite deadlines. In fact, in Plaintiff's brief for this appeal, it acknowledges that it 'had knowledge of [the allegations] since October 2004.' "); *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990) ("This is most definitely not a motion in which any of defendant's six proposed new affirmative defenses arose from recent discovery in the case.").

---

[1] In Plaintiff's Certification in support of his motion, Plaintiff also states that at the December 7, 2010 telephone conference "Plaintiff's counsel sought the Court's permission for Leave to File an Amended Complaint, and the Court granted Plaintiff's request and directed Plaintiff to file the Motion for Leave to Amend no later than January 14, 2011." (Certification of Stephen Gaechter, Esq. ("Gaechter Cert."), ¶ 7, ECF No. 23-1). First, the Certification is unclear in that the Court did not grant Plaintiff's request for leave to file an Amended Complaint; rather, the Court granted Plaintiff's request to file a motion for leave to file an Amended Complaint. Second, as is reflected by its absence in Plaintiff's Certification, at no time during the conference did the Court extend the deadline for amendments of pleadings in the Pretrial Scheduling Order. The fact that Plaintiff was allowed to file a motion did not absolve him from his requirement to show "good cause" under RULE 16.

7

Although Plaintiff cites only to RULE 15 and does not deliberately address whether "good cause" exists under RULE 16, Plaintiff nevertheless argues that he learned of facts giving rise to the proposed claims from documents that were produced by Dewey after the deadline for amendments of pleadings had passed. However, a review of Plaintiff's brief in support of his motion to amend, as well as the allegations in the Complaint and the proposed Amended Complaint, demonstrates that Plaintiff knew of the facts forming a basis for the proposed claims well before September 1, 2010.

In his moving brief, Plaintiff states he learned the following facts after September 1, 2010 which gave rise to the two proposed claims against Dewey:

- [Dewey] had agreed as a matter of contract to provide long term disability insurance to Plaintiff and that it had breached its contract by not providing this to Plaintiff.

- At the time Plaintiff was hired Dewey agreed to pay him an insurance benefit equal to 60% of his salary up to $5,000 per month, after he had been disabled for 90 days up to age 65.

- Plaintiff and Dewey's President, John Dewey, on behalf of Defendant Dewey, had a conversation on Tuesday, November 22, 2005 regarding his separation from the company during which time Dewey told Plaintiff that he would have 5 weeks to review the Separation Agreement and Release 'before there would be any hiccups in pay or benefits', and that he was to contact the company the following Monday after the Thanksgiving break as to whether he wanted to resign, retire or be terminated.

- Dewey failed to inform Velto that it would be applying to change its long term disability insurance carriers the next day, and that this would affect his eligibility for long term disability benefits.

(Pl. Brief 2, ECF No. 20-1) Upon review of the record, Plaintiff must have had knowledge of these facts prior to the September 1, 2010 deadline -- and even prior to filing the original Complaint.

When Plaintiff was offered a position by Dewey on January 4, 1988, Plaintiff knew that Dewey agreed to provide him with long term disability insurance. (*See* Amend. Compl., ¶ 31,

ECF No. 20-2)  Indeed, Plaintiff specifically alleges in the proposed Amended Complaint that "[b]y letter dated January 4, 1988, [Dewey] offered the position of Controller to Plaintiff Velto with the standard benefit package offered to Group I employees.  This included long term disability insurance which was at no cost to Plaintiff." (Amend. Compl., ¶ 31, ECF No. 20-2). Plaintiff also must have known the extent and terms of the insurance benefits plan provided by Dewey at least as of February 12, 2007 since he received benefits from Reliance beginning February 12, 2007 through June 26, 2008. (*See* Compl., ¶ 12, ECF No. 1).  Finally, Plaintiff necessarily knew that Dewey allegedly breached its agreement to provide long term disability benefits as early as January 22, 2010 when Plaintiff received MetLife's final determination of his claim upholding MetLife's denial of benefits (Plaintiff had already received Reliance's final determination on or about October 15, 2009).  (*See* Amend. Compl., ¶¶ 20-21, ECF No. 20-2). Therefore, Plaintiff knew of the proposed claim for breach of contract well before the deadline for amendments of pleadings.

Plaintiff also must have known about the November 22, 2005 conversation with Dewey's President regarding the Separation Agreement and Release - and what was discussed during the conversation - since November 22, 2005 since <u>Plaintiff was one of the two participants of the conversation</u>: "<u>Plaintiff</u> and Dewey's President ... had a conversation on Tuesday, November 22, 2005 ... during which time Dewey told <u>Plaintiff</u> ..." *(*Pl. Brief 2, ECF No. 20-1) (emphasis added).  Finally, Plaintiff must have known that Dewey changed long term disability insurance carriers as early as May 12, 2006 when Plaintiff signed the Separation Agreement and Release that specifically named Reliance as "Dewey's group long-term disability provider" (Certification of Keith J. Miller ("Miller Cert."), Ex. F, ECF No. 22-7) and no later than February 12, 2007

when the new carrier, Reliance, actually began paying Plaintiff benefits (Compl., ¶ 12, ECF No. 1).

Moreover, Plaintiff alleges in his Complaint that he was advised by Reliance to submit a claim with MetLife sometime prior to June 23, 2009: "Plaintiff also submitted, based upon the contention and advice of Reliance, a proof of claim with MetLife, who by letter dated June 23, 2009 denied Plaintiff's claim for benefits." *Id.* at ¶ 19. Accordingly, Plaintiff must have known sometime prior to June 23, 2009 that Dewey had changed carriers -- from MetLife to Reliance. Plaintiff, therefore, must also have known prior to June 23, 2009 that John Dewey had failed to inform Plaintiff during their November 22, 2005 conversation that Dewey would be applying to change its long term disability carrier. Finally, to the extent his claim has merit, Plaintiff must have known at least as of January 22, 2010 (when MetLife provided Plaintiff with a final determination of his claim upholding its denial of benefits) and certainly as of October 15, 2009 (when Plaintiff received Reliance's final determination) that Dewey's change in long-term disability carriers would affect his eligibility for long term disability benefits. *See Id.* at ¶¶ 20-21.

As stated above, Plaintiff was aware that Reliance had replaced MetLife as the disability insurance carrier as of the time he signed the Release with Dewey wherein he specifically reserved the right to pursue a claim for insurance benefits. If he intended to pursue a claim for benefits against Dewey (because Dewey somehow promised him such benefits - as opposed to promising to purchase a policy of insurance for such benefits) he should have brought the claim on a timely basis. In this regard, the Court notes that the second denial by Reliance occurred in March 18, 2009. *Id.* at ¶ 17. That denial was specifically based on the grounds that Plaintiff was disabled on November 1, 2005, a date prior to the effective date of the Reliance policy. Plaintiff,

as stated above, was clearly knowledgeable about the various policies in force. He was aware of his disability, the reasons for it, and when he became disabled. Finally, he was represented by counsel at the time. Accordingly, Plaintiff knew of the facts giving rise to the proposed claims for negligence and breach of contract against Dewey well before the deadline for amendments of pleadings.

Finally, Plaintiff also claims in his brief that he learned after September 1, 2010 that "after suffering two coronary episodes, Dewey knew that Plaintiff would not be able to continue to work on a full time basis." (Pl. Brief 2, ECF No. 20-1) While this may or may not be true, this information is unnecessary for Plaintiff to assert either of the proposed claims. Dewey's knowledge that Plaintiff would not be able to continue working is irrelevant to whether Dewey breached their agreement to provide long-term disability benefits. It is also unnecessary to set forth a claim for negligence. In fact, a belief by Dewey that Plaintiff may at some time in the future require disability benefits - which Dewey necessarily would have in the case of any employee since it provided long-term disability insurance - would be sufficient. This purported new information is therefore irrelevant to the Court's analysis of good cause.[2]

Accordingly, Plaintiff has not shown good cause to amend the Court's July 26, 2010 Pretrial Scheduling Order to extend the deadline for motions to amend pleadings to add the two proposed claims against Dewey.[3]

---

[2] Finally, even if good cause existed – which it does not – the Court notes that Plaintiff waited over two and a half months after it received the documents from Dewey before Plaintiff wrote to the Court seeking permission to file a motion for leave to amend. (Miller Cert., Ex. D, ECF No. 22-1; Gaechter Cert.,Ex.D, ECF No. 23-1)

[3] Since Plaintiff has failed to show good cause pursuant to RULE 16, the Court need not conduct an analysis of the proposed amended pleading under RULE 15(a). For the same reason, the Court also need not conduct an analysis of futility of Plaintiff's proposed causes of action. It is certainly clear to the Court on this record, however, that Plaintiff released Dewey from all claims arising from his employment. Therefore any claims based upon breach of contract or negligence were released. Those claims arose from his employment in connection with the alleged promises made by Dewey. Furthermore, the Court notes that Plaintiff quotes from a draft of his Release. The signed Release does not contain the language quoted by counsel for Plaintiff, to wit: "Mr. Velto is entitled to

**IV.** **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for leave to file an Amended Complaint is denied.

```
                                    _____
                                    JOSEPH A. DICKSON, U.S.M.J.
```

cc:   Hon. Dennis M. Cavanaugh, U.S.D.J.

---

Dewey company policies, ERISA, and other as provided by law." The elimination of such language in the final release supports Dewey's position that Plaintiff released all of his claims against Dewey and elected to proceed against Reliance, with the advice of counsel.